NR:FTB

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION
FOR A SEARCH WARRANT FOR:

THE PERSON KNOWN AND
DESCRIBED AS TAMBHIA
TUCKER, DATE OF BIRTH
███████████

- - - - - - - - - - - - - - - - -X

AFFIDAVIT IN SUPPORT
OF APPLICATION FOR A
SEARCH WARRANT

(Fed. R. Crim. P. 41)

18-M-231

EASTERN DISTRICT OF NEW YORK, SS:

WILLIAM SCHIERLE, being duly sworn, deposes and states that he is a Task Force Officer with the Joint Robbery Task Force of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), duly appointed according to law and acting as such.

Upon information and belief, there is probable cause to believe that evidence of violations of Title 18, United States Code, Sections 1951(a), 924(c)(1)(A)(i), 924(c)(1)(A)(ii), and 924(c)(1)(A)(iii)—specifically, that on or about August 14, 2017, TAMBHIA TUCKER, date of birth ███████████, did knowingly and intentionally obstruct, delay and affect commerce and the movement of articles and commodities in commerce, by robbery, to wit: attempted armed robbery of United States currency from employees of a Sunoco gas station and auto repair shop in Brooklyn, New York—will be

obtained by the taking, and preserving as evidence, of a buccal swab sample or blood sample of TUCKER.[1]

The source for your deponent's information and the grounds for his belief are as follows:[2]

1. I am a Task Force Officer with the Joint Robbery Task Force of the ATF and have served in that capacity for three years. The facts set forth in this affidavit are based upon my own investigation of the facts and upon what I have learned from other individuals who have participated in the investigation. Additionally, statements attributable to individuals herein are set forth in sum and substance and in part.

2. Since August of last year, I have been involved in an investigation of TAMBHIA TUCKER related to the aforementioned criminal activity.

3. On September 25, 2017, the Honorable Peggy Kuo, United States Magistrate Judge, issued a warrant for TAMBHIA TUCKER's arrest on the basis of an affidavit and complaint which is attached hereto as <u>Exhibit A</u> and incorporated by reference herein. The defendant was arrested and brought into federal custody on or about February 9, 2018. The defendant, who had been in state custody on unrelated charges

---

[1] Some of the courts that have addressed the issue have found that obtaining DNA via saliva is subject to the protections of the Fourth Amendment. See <u>United States v. Nicolosi</u>, 885 F. Supp. 50, 51-56 (E.D.N.Y. 1995) (Glasser, J.); <u>In re Shabazz</u>, 200 F. Supp. 2d 578, 581-85 (D.S.C. 2002). But see <u>United States v. Owens</u>, 2006 WL 3725547, at *6-17 (W.D.N.Y. Dec. 15, 2006) (finding probable cause not necessary for a saliva sample for DNA from an inmate); <u>In re Vickers</u>, 38 F. Supp. 2d 159, 165-68. (D.N.H. 1998) (permitting saliva sample by grand jury subpoena).

[2] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause to search, I have not set forth all of the facts and circumstances relevant to this investigation.

2

brought by local law enforcement officials in New Jersey, made an appearance in U.S. District Court for the District of New Jersey on February 9, 2018, where he was ordered removed in custody to the Eastern District of New York. The defendant made his initial appearance on the complaint in the Eastern District of New York on February 23, 2018. On March 8, 2018, a grand jury sitting in the Eastern District of New York returned a three-count indictment charging the defendant with conspiracy to commit Hobbs Act robbery (in violation of 18 U.S.C. § 1951(a)); attempted Hobbs Act robbery (in violation of 18 U.S.C. § 1951(a)); and possessing, brandishing, and discharging a firearm in furtherance of crimes of violence (in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), and 924(c)(1)(A)(iii)).

    4.  As set forth in <u>Exhibit A</u>, New York City Police ("NYPD") officers retrieved a baseball hat and a bandana worn by the defendant during the attempted robbery of a Sunoco gas station and auto repair shop on August 14, 2017. The NYPD officers found the hat and bandana at the location where the defendant was seen discarding them on video footage from a surveillance camera. More specifically, the defendant and his co-conspirator discharged their firearms (as did one of their intended victims, who sustained a gunshot wound to the leg) during their attempted robbery of the Sunoco gas station and auto repair shop in Brooklyn. NYPD officer canvassed buildings along the route that the defendant and his co-conspirator took when fleeing the scene and obtained the surveillance video described above. Upon recovering the hat and bandana, NYPD vouchered them as evidence and subsequently submitted the items to the Office of Chief Medical Examiner for New York City ("OCME") for DNA testing.

5. Based on my training and experience, as well as my conversations with other law enforcement officials, I am aware that DNA can be recovered from articles of clothing, such as a bandana.

6. On or about September 22, 2017, I was informed that (i) the OCME was able to develop a DNA profile from the bandana that was recovered by NYPD officers; (ii) the DNA profile was then checked against a DNA databank of known DNA profiles; and (iii) the DNA found on the bandana matched the DNA profile of TAMBHIA TUCKER, which was taken from him as a result of a prior conviction in North Carolina.[3]

7. The government wishes to compare the DNA found on the bandana with a new DNA sample obtained directly from TAMBHIA TUCKER.

8. Based on the above information, there is probable cause to believe that TAMBHIA TUCKER is a source of the DNA evidence on the bandana. Therefore, there is probable cause to believe that a buccal swab or sample of TUCKER's blood would constitute evidence of his commission of the charged crimes.

WHEREFORE, your deponent requests that a search warrant be issued authorizing ATF Special Agents, NYPD officers, United States Marshals and other appropriate law enforcement and support personnel to seize and obtain from TAMBHIA TUCKER a buccal swab sample or sample of blood. An appropriately trained law

---

[3] Specifically, the OCME determined that two individuals had contributed DNA that was found on the bandana. 97% of the DNA found on the bandana came from a "Male Donor A" that was later identified through the database search described above to be TAMBHIA TUCKER. The OCME also tested the baseball hat for DNA and found that two individuals had contributed to the DNA found on the hat. The OCME determined that over 80% of the DNA found on the hat came from a "Female Donor A." Based on the information provided to me by the OCME, the profile for Female Donor A did not match any known DNA profiles in any of the databases searched by the OCME.

4

enforcement officer, or an appropriately trained designee, will perform the cheek swabbing. The DNA samples sought herein will be collected by buccal swabbing. This method involves taking a sterile swab (similar to a Q-Tip) and gently scrubbing the inside right cheek, then the inside left cheek, for approximately five to ten seconds. Two samples are requested in the event that one of the samples becomes contaminated or otherwise cannot be tested. The samples seized will be subsequently submitted to a forensic laboratory for examination and will be subject to examination, testing and analysis. A blood sample will only be sought in the event that TAMBHIA TUCKER refuses to submit to a buccal cheek swab. In the event that a blood sample is taken, a licensed doctor or nurse or other qualified medical practitioner will take the sample.

William Schierle
Task Force Officer
Joint Robbery Task Force of the ATF

Sworn to before me this

S/ Gold

THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

5

## **EXHIBIT A**

JD:FTB

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

TAMBHIA TUCKER,

Defendant.

- - - - - - - - - - - X

**To Be Filed Under Seal**

COMPLAINT

(T. 18, U.S.C., §§ 1951, 924(c)(1)(A)(i)
and 924(c)(1)(A)(iii))

Case No. 17-MJ-847

EASTERN DISTRICT OF NEW YORK, SS:

    WILLIAM J. SCHIERLE, being duly sworn, deposes and states that he is a Detective with the New York City Police Department ("NYPD") and a Task Force Officer with the NYPD/Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Joint Robbery Task Force, duly appointed according to law and acting as such.

    On or about August 14, 2017, within the Eastern District of New York, the defendant TAMBHIA TUCKER did knowingly and intentionally attempt to obstruct, delay and affect commerce and the movement of articles and commodities in commerce, by robbery, to wit: the attempted robbery of U.S. currency from one or more employees of a commercial establishment located in Brooklyn, New York.

    (Title 18, United States Code, Section 1951)

    On or about August 14, 2017, within the Eastern District of New York, the defendant TAMBHIA TUCKER did knowingly and intentionally use and carry one or more firearms during and in relation to a crime of violence, to wit: a violation of 18 U.S.C. § 1951,

and did knowingly and intentionally possess such firearms in furtherance of that crime of violence, one or more of which firearms was discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 924(c)(1)(A)(iii))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a Detective with the NYPD for approximately thirteen years; and a Task Force Officer with the NYPD/ATF Joint Robbery Task Force for approximately two-and-a-half years. My colleagues and I on the NYPD/ATF Joint Robbery Task Force conduct investigations of armed robberies and other criminal conduct. In my role as a Task Force Officer, I have investigated various federal criminal violations, including armed robbery conspiracies. During the course of those investigations, I have examined physical evidence, debriefed confidential informants and interviewed civilian witnesses. The information set forth below is based upon my experience and training as an NYPD Detective, my review of documents and other evidentiary items, my debriefing of witnesses, and my discussions with other law enforcement agents. Unless specifically indicated, all conversations and statements described in this affidavit are related in sum and substance and in part only.

2. In the afternoon of August 14, 2017, multiple NYPD officers responded to a Sunoco gas station and auto repair shop located at 584 Gates Avenue in Brooklyn, New York (the "Gas Station"). The officers were responding to reports of an attempted armed

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3

robbery. When the officers arrived at the scene, they spoke with a man they identified as the owner of the Gas Station ("Victim-1").

3. Victim-1 told the officers in sum and substance that at approximately 1:20 pm, two black men, with their faces covered, and displaying guns, had attempted to rob the Gas Station. Victim-1, who is a retired Corrections Officer, said that he approached the two armed men, who fired their guns at him. Victim-1 said that he drew his own firearm and returned fire; Victim-1 said that one of the armed men had shot him in the leg. When NYPD officers spoke with Victim-1, they observed that he had a gunshot wound in the leg, which required emergency medical treatment.

4. NYPD officers obtained security footage from the Gas Station that showed two armed men entering the gas station carrying guns. The footage showed the same two men a short time later shooting guns at another individual who had exited the Gas Station (and who was later identified as Victim-1). NYPD officers canvassed the surrounding neighborhood and obtained video security footage from various commercial establishments and residential buildings. A review of that footage showed two men running from the Gas Station immediately after the time of the attempted robbery. The two men appeared to be wearing the same clothes as the individuals observed in the security footage from the Gas Station.

5. One of the men appeared to be wearing a white t-shirt, a baseball cap with the word "Miami" across the front, and a bandana that had been pulled up over his face. A review of the security footage from residential buildings in the vicinity of the gas station

4

showed this man removing the baseball hat and the bandana and throwing them away in the general vicinity of 558 and 560 Gates Avenue, Brooklyn, New York.

6. NYPD officers recovered from this location a bandana and a black baseball hat with the word "Miami" across the front. The bandana and the hat were sent to the Office of Chief Medical Examiner for the City of New York ("OCME"). OCME determined that 84% of the DNA suitable for testing from the baseball hat was attributable to an unknown female donor. OCME also determined that 97% of the DNA suitable for testing from the bandana was attributable to a male donor. The defendant TAMHBIA TUCKER's DNA profile was later identified as the male donor for the DNA obtained from the bandana.

7. I have compared photographs of the defendant TAMBHIA TUCKER on file with the NYPD to still images from the security footage showing the individual who discarded the hat and the bandana after he removed both from his head on the afternoon of the robbery, and TUCKER appears to be the individual from the security footage.

WHEREFORE, your deponent respectfully requests that the defendant TAMBHIA TUCKER be dealt with according to law.

_____
WILLIAM J. SCHIERLE
Task Force Officer
NYPD

Sworn to before me this
25th day of September, 2017

_____
THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK